884 F.2d 1397
 12 U.S.P.Q.2d 1918
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
SPECIALIZED ELECTRONICS CORPORATION, Plaintiff/Appellant,
v.
AVIATION SUPPLIES & ACADEMICS, INC., d/b/a ASA Publications,
Defendant/Cross-Appellant.
 Nos. 88-1394, 88-1395.
 United States Court of Appeals, Federal Circuit.
 Aug. 3, 1989.
 
 Before RICH, Circuit Judge, BENNETT, Senior Circuit Judge, and BISSELL, Circuit Judge.
 RICH, Circuit Judge.
 
 DECISION
 
 1
 These appeals are from the final judgment of the United States District Court for the Western District of Washington, Specialized Electronics Corp. v. Aviation Supplies & Academics, Inc., 1988 U.S.Dist. LEXIS 15729, 7 USPQ2d 1681 (1988), Waters, J. The district court held that defendant ASA did not infringe the asserted claims of two patents of plaintiff SEC by using and selling its CX-1 navigational flight computer and that ASA had not proved the claims invalid. We affirm.
 
 OPINION
 A. Claim 9 of the '058 Patent
 
 2
 1. The district court correctly construed claim 9 as requiring the computer to prompt an operator for data during the calculation portion of a program. This construction follows from SEC's explanation to the examiner, in response to a Sec. 103 rejection, of how claim 9 differed from a computer disclosed in a patent to Wang. SEC explained that in the Wang computer "the various types of data required to solve the problems ... are first inserted [by the operator] into different memory locations, and [then] the calculations are made as a continuous processing of the stored data to obtain the solutions." SEC distinguished its invention from the Wang device as follows:
 
 
 3
 Contrast that mode of operation with applicants' mode of operation. In applicants' case the program key is actuated to initiate the program, [then] under program control a single data title indicator is energized, the user then key punches that data using the number keys and enters the numbers with the enter key, the program then executes on the entered data and reaches an intermediate result which is stored in temporary memory.
 
 
 4
 Under program control another data title is energized which identifies the next item of data required. Thus the data is entered by the operator when required in the program. In Wang's machine, memory capacity is required for all different items of data involved in a given program. Note Wang's title "Programmable Calculator Having ... Multiple Memories." Applicants' machine can be constructed with relatively little memory, and that is an important practical aspect of the invention in terms of cost savings in manufacture and reducing the complexity of the machine. [Our emphasis.]
 
 
 5
 After this explanation, the examiner allowed claim 9.
 
 
 6
 This passage makes clear that SEC intended the last clause of claim 9 (i.e., "when the entry is required") to mean that the computer must prompt the operator for data during the calculation portion of the program. See also the quotation at page 4, infra. Accordingly, we find no fault with the court's finding that the CX-1, which calls for all data to be entered prior to the start of any mathematical calculation, does not literally infringe claim 9.
 
 
 7
 2. The district court did not err in finding that the CX-1 does not infringe claim 9 under the doctrine of equivalents. We agree with the district court that the CX-1 and the claimed invention do not operate in substantially the same way. The CX-1 prompts the operator to enter all input data at the outset of a program. Then the calculation is begun, and data are recalled from memory when required. In significant respects, this way of operating is similar to SEC's description of Wang's way of operating, because the CX-1 requires extra memory to pre-store the data until they are required to be used in the mathematical calculation. As SEC explained to the examiner in discussing Wang, pre-storing data requires extra memory, both in which to store the data and in which to store program instructions which tell the computer how to retrieve the stored data. The invention defined by claim 9 eliminates all such non-essential memory and SEC argued to the examiner that this memory-saving "entry when required" operation was an important aspect of the claimed invention. In fact, SEC rhetorically asked "How important is this"--and answered:
 
 
 8
 These advantages of applicants' device are important and valuable. The unobvious feature of applicants' invention--the new and unexpected result--flows from the combination of multiple light emitting data title indicators and program control of both the indicators and the computational unit, to handle a greater number, and a greater number of more complex, programs with the same computational unit and dedicated memory. Instead of using memory space for storage and program instructions having to do with finding and retrieving from memory the data for the problems, program routines can be stored for additional problem solving. The operator is participating in the program and entering the data when needed. [Our emphasis.]
 
 
 9
 Thus, SEC's answer establishes that SEC believed the claimed invention operated in a substantially different way than the Wang computer because it accomplished the same result using significantly less memory. In view of this, we believe the district court was not required to find that the CX-1, which like the Wang device uses non-essential memory, operates in substantially the same way as the invention of claim 9.
 
 
 10
 3. The district court did not violate the doctrine of claim differentiation by construing claim 9 to require entry of data during the calculation portion of a program. As already explained, the prosecution history dictates this construction. Moreover, we agree with ASA that the district court did not "read into" independent claim 9 the requirement that data be entered "when required"; he simply gave recognition to the language that was already there.
 
 B. Claim 27 of the '057 Patent
 
 11
 1. The district court correctly construed claim 27 as requiring the input of data when needed during the calculation portion of a program. Our analysis can be brief because SEC's "mode of operation" arguments to obtain allowance of claim 27 were the same arguments it made to obtain allowance of claim 9 of the '058 patent, quoted in part above. We reject SEC's post hoc contention that the "mode of operation" arguments made in the '057 prosecution history were meant to apply only to the "non-prompting claims" of that patent (which would exclude their applicability to claim 27). If the arguments did not apply to the "prompting" claims, as SEC contends, then SEC would not have advanced the same arguments to obtain allowance of the '058 patent claims, all of which require "prompting."
 
 
 12
 2. For the reasons stated at A.3, supra, we are unpersuaded that the district court violated the doctrine of claim differentiation by construing claim 27 to require entry of data during the calculation portion of a program.
 
 
 13
 3. Since we agree with the district court's construction of claim 27 as requiring the computer to prompt an operator for data when needed during the program, we find it unnecessary to reach SEC's argument that claim 27 does not require one program selector key for each program.
 
 C. Validity
 
 14
 We do not review the validity of asserted patent claims when we can affirm on the basis of noninfringement. See, e.g., Vieau v. Japax, Inc., 823 F.2d 1510, 1517, 3 USPQ2d 1094, 1100 (Fed.Cir.1987). Accordingly, we vacate the district court's holding that neither of the asserted claims was proved invalid.