CARDINAL CHEMICAL CO. ET AL. *v.* MORTON
INTERNATIONAL, INC.

No. 92–114.   Argued March 3, 1993—Decided May 17, 1993

84

*Charles F. Schill* argued the cause for petitioners. With him on the brief was *Larry L. Shatzer II.*

*Gordon R. Coons* argued the cause for respondent. With him on the brief were *John E. Rosenquist, Jeffrey S. Ward,* and *Gerald K. White.**

JUSTICE STEVENS delivered the opinion of the Court.

The question presented is whether the affirmance by the Court of Appeals for the Federal Circuit of a finding that a patent has not been infringed is a sufficient reason for vacating a declaratory judgment holding the patent invalid.

Respondent, Morton International, Inc. (Morton), is the owner of two patents on chemical compounds used in polyvinyl chloride (PVC).[1] In 1983 Morton filed this action in the

---

**J. Michael McWilliams, Jack C. Goldstein,* and *William C. Rooklidge* filed a brief for the American Bar Association as *amicus curiae* urging reversal.

Briefs of *amici curiae* were filed for the American Intellectual Property Law Association by *Joseph R. Re, William L. LaFuze, Nancy J. Linck, Harold C. Wegner,* and *H. Ross Workman;* and for Atochem North America, Inc., by *Brian G. Brunsvold, Herbert H. Mintz, Richard B. Racine,* and *Michael D. Kaminski.*

[1] United States Patent No. 4,062,881, dated December 13, 1977, and No. 4,120,845, dated October 17, 1978. The two patents are directed to organotin mercaptoalkyl carboxylic acid ester sulfides—basically, compounds of sulfur and tin that serve as heat stabilizers for PVC, protecting it from decomposition, discoloration, and loss of strength. See 959 F. 2d 948, 949, and n. 1 (CA Fed. 1992).

United States District Court for the District of South Carolina alleging that petitioners, Cardinal Chemical Company and its affiliates (Cardinal), had infringed those patents. Cardinal filed an answer denying infringement and a counterclaim for a declaratory judgment that the patents are invalid. While this case was pending in the District Court, Morton filed two other actions against other alleged infringers of the same patents. One was filed in the Eastern District of Louisiana, the other in the District of Delaware. The defendants in both cases, like Cardinal, filed counterclaims for declaratory judgments that the patents were invalid. Of the three, the Louisiana case was tried first and, in 1988, resulted in a judgment for the defendant finding no infringement and declaring the patents invalid.[2] On appeal, the Federal Circuit affirmed the finding of no infringement but vacated the judgment of invalidity.[3] The Delaware case is still pending.

In 1990 this case proceeded to a 5-day bench trial. The South Carolina District Court concluded, as had the Louisiana District Court, that the patentee had failed to prove infringement and that the defendant-counterclaimant had proved by clear and convincing evidence that both patents were invalid.[4] Accordingly, the court mandated two sepa-

---

[2] Morton Thiokol, Inc. v. Witco Chemical Corp., No. 84–5685 (ED La., June 22, 1988), App. 10, 24–31, 36.

[3] Morton Thiokol, Inc. v. Argus Chemical Corp., 11 USPQ 2d 1152 (CA Fed. 1989), judgt. order reported at 873 F. 2d 1451 (CA Fed. 1989) (nonprecedential). The court explained its disposition of the judgment of invalidity as follows: "We hold that the finding of no literal infringement is not clearly erroneous and on that basis we affirm the portion of the judgment of the district court that determined that the patents are not infringed and dismissed the suit. We therefore find it unnecessary to reach the district court's determination that the patents are invalid, and vacate the portion of the judgment that so determined." 11 USPQ 2d, at 1153, App. 39.

[4] "The evidence clearly and convincingly establishes that a person skilled in the art is unable to ascertain the claimed structures in order to avoid infringement . . . . Therefore, this court concludes that the lan-

rate judgments: one dismissing the action for infringement with prejudice, and another on the counterclaim, declaring the patents invalid.[5]

Again, Morton appealed to the Federal Circuit, challenging both the dismissal of its infringement claim and the judgment of invalidity. Cardinal filed a cross-appeal contending that it was entitled to an award of fees pursuant to 35 U. S. C. § 285 and that Morton should be sanctioned for prosecuting a frivolous appeal. The defendant in the third, Delaware, case filed a brief *amicus curiae* urging the court to affirm the judgment of invalidity.[6] Again, however, after affirming the dismissal of the infringement claim, the Federal Circuit vacated the declaratory judgment. It explained:

> "Since we have affirmed the district court's holding that the patents at issue have not been infringed, we need not address the question of validity. *Vieau* v. *Japax, Inc.*, 823 F. 2d 1510, 1517, 3 USPQ 2d 1094, 1100 (Fed. Cir. 1987). Accordingly, we vacate the holding of invalidity." 959 F. 2d 948, 952 (1992).

The court also ruled that Morton was not liable for fees because it had advanced an argument that "apparently it was not in a position to raise earlier." *Ibid.* Judge Lourie concurred in the result, but believed the parties were entitled

---

guage of the [claims] is too vague to satisfy the definiteness requirement of § 112." App. to Pet. for Cert. 67a.

[5] "Now, therefore,

"IT IS ORDERED that the Clerk is directed to enter judgment for the defendants in this case, dismissing the plaintiff's action for infringement with prejudice and at its costs.

"IT IS FURTHER ORDERED that the Clerk is directed to enter judgment for the defendants on their counterclaim of invalidity of the patents, as patents 4,062,881 and 4,120,845 are found to be invalid." *Id.*, at 70a.

[6] See 959 F. 2d, at 950, n. 2 (referring to *Morton International, Inc.* v. *Atochem North America, Inc.*, No. 87–60–CMW (Del., filed Feb. 9, 1987)). Atochem has also filed a brief *amicus curiae* in this Court, urging our reversal of the Federal Circuit practice.

to an affirmance of the invalidity holding "so that they can plan their future affairs accordingly." *Id.*, at 954.

Both parties then filed petitions for rehearing, arguing that the court should have decided the validity issue instead of vacating the District Court's declaratory judgment;[7] they also filed suggestions for rehearing en banc, urging the Court of Appeals to reconsider its post-1987 practice of routinely vacating a declaratory judgment of invalidity whenever noninfringement is found. Over the dissent of three of its judges, the court declined those suggestions.[8] Chief Judge Nies filed a thorough explanation of that dissent; she found no "justification for our *Vieau* decision either legally or as a 'policy'. . . . The parties can now look only to the Supreme Court for correction." 967 F. 2d 1571, 1578 (CA Fed. 1992).

Cardinal filed a petition for certiorari asserting that the Federal Circuit errs in applying a *per se* rule to what should be a discretionary matter. Pet. for Cert. 13. Morton did not oppose the grant of certiorari, but instead pointed out that it also had an interest in having the validity issue adjudicated.[9] It explained that, after the Federal Circuit had

---

[7] Those petitions were denied. 1992 U. S. App. LEXIS 7580 (CA Fed. 1992), App. to Pet. for Cert. 71a, 72a.

[8] 1992 U. S. App. LEXIS 10067 (CA Fed. 1992), App. to Pet. for Cert. 73a, 74a.

[9] Because both parties agree that we should reject the Federal Circuit's practice, it might be thought that they lack the adversarial posture required by Article III. Although both Morton and Cardinal do agree on the correct answer to the question presented, they do so only so that they can reach their true dispute: the validity of Morton's two patents, a subject on which they are in absolute disagreement. Further, it is clear that no collusion between the parties has brought them here; if anything has dulled the adverseness between them, it is the Federal Circuit practice that is the subject of this case. Cf. *INS* v. *Chadha*, 462 U. S. 919, 939 (1983) (finding Art. III adverseness even though the two parties agreed on the unconstitutionality of the one-House veto that was the subject of that case; the parties remained in disagreement over the underlying issue

twice refused substantive review of findings that its two patents were invalid, the patents have been

> "effectively stripped of any power in the marketplace.
>
> "If Morton were to proceed against another infringer, the district court, in all likelihood would accept the twice-vacated invalidity holdings, just as the district court below adopted wholesale the [Louisiana] district court's invalidity holdings, without any independent evaluation as to whether those holdings were correct. Further, any future accused infringer would, in all likelihood, argue for an award of attorney's fees as Cardinal has done here, on the ground that Morton should have known better than sue on an 'invalid patent' . . . .
>
> "The value of Morton's patents is therefore essentially zero—effectively not enforceable and viewed with a jaundiced eye by competitors and district courts alike. [Morton] has lost valuable property rights . . . without due process of law."   Brief for Respondent 16–17.

Because the Federal Circuit has exclusive jurisdiction over appeals from all United States District Courts in patent litigation, the rule that it applied in this case, and has been applying regularly since its 1987 decision in *Vieau* v. *Japax, Inc.*, 823 F. 2d 1510, is a matter of special importance to the entire Nation.   We therefore granted certiorari.   506 U. S. 813 (1992).

## I

The Federal Circuit's current practice of routinely vacating declaratory judgments regarding patent validity following a determination of noninfringement originated in two

of whether Chadha should be deported).   The Federal Circuit's improper finding of mootness cannot itself moot this case.

cases decided by different panels of that court on the same day. In *Vieau*, the patentee had appealed adverse rulings on damages, infringement, and validity and the alleged infringer had filed a cross-appeal asserting that the District Court should have declared the patent invalid. After affirming the District Court's finding of noninfringement, the Federal Circuit concluded:

> "Our disposition on the issue of infringement renders moot the appeal of the propriety of a directed verdict on the issues of damages and willful infringement. There is no indication that Japax's cross-appeal on invalidity extends beyond the litigated claims or the accused devices found to be noninfringing. Accordingly, we also dismiss the cross-appeal as moot. The judgment entered by the district court with respect to each of the mooted issues is therefore *vacated*. It is *affirmed* with respect to infringement." 823 F. 2d, at 1517.

Judge Bennett filed a concurring opinion, fleshing out this perfunctory holding and explaining that there was no need to review the declaratory judgment of invalidity in the absence of any "continuing dispute (such as the presence or threat of further litigation) regarding other claims or other accused devices that remains unresolved by the finding of noninfringement."[10]

In the second case, *Fonar Corp.* v. *Johnson & Johnson*, 821 F. 2d 627 (CA Fed. 1987), the District Court had held that the patent was not infringed and that the defendant-

---

[10] *Vieau*, 823 F. 2d, at 1520. He added: "It is the burden of the party seeking the declaratory judgment to illustrate, either in its briefs or at oral argument, the continued existence of a case or controversy should a decision of noninfringement be made by this court in deciding the appeal. *See International Medical Prosthetics*, 787 F. 2d at 575, 229 USPQ at 281 (burden is on declaratory plaintiff to establish that jurisdiction existed at, and has continued since, the time the complaint was filed). This requirement avoids having this court unnecessarily address what might turn out to be a hypothetical situation." *Ibid.*

counterclaimant had failed to prove invalidity. On appeal, the court affirmed the noninfringement holding, and vacated the judgment on the counterclaim as moot. In his opinion for the panel, Chief Judge Markey explained:

> "There being no infringement by J & J of any asserted claim, there remains no case or controversy between the parties. We need not pass on the validity or enforceability of claims 1 and 2. . . . *[C]f. Altvater* v. *Freeman,* 319 U. S. 359, 363–65 . . . (1943) ('To hold a patent valid if it is not infringed is to decide a hypothetical case,' but a counterclaim for invalidity is not mooted where counterclaim deals with additional patent claims and devices not involved in the complaint and with license issues.).
>
> .        .        .        .        .
>
> "The judgment that J & J has not proven claims 1 and 2 invalid or unenforceable is vacated and the appeal from that judgment is dismissed as moot." *Id.,* at 634.

A footnote emphasized that there was no longer any dispute between the parties beyond the specific charge of infringement that had been resolved by the finding of noninfringement.[11]

The three opinions in *Vieau* and *Fonar* indicate that the Federal Circuit's practice of vacating declaratory judgments of patent validity (or invalidity) is limited to cases in which the court is convinced that the finding of noninfringement has entirely resolved the controversy between the litigants

---

[11] "The record contains no assertion that J & J infringes the '832 patent by any methods other than those found not to infringe, or that J & J's machines infringe the nonasserted apparatus claims. J & J's counterclaim merely repeated the affirmative defenses of invalidity and unenforceability and the verdict form, with no objection by J & J, dealt only with the asserted claims. J & J's motion for JNOV dealt only with claims 1 and 2." *Fonar,* 821 F. 2d, at 634, n. 2.

by resolving the initial complaint brought by the patentee.[12] The Federal Circuit has concluded that in such cases the declaratory judgment is "moot" in a jurisdictional sense, a conclusion that it considers dictated by two of our earlier opinions, *Electrical Fittings Corp.* v. *Thomas & Betts Co.*, 307 U. S. 241 (1939), and *Altvater* v. *Freeman*, 319 U. S. 359 (1943).[13] We therefore begin with a comment on those two cases.

---

[12] That the holdings of *Vieau* v. *Japex, Inc.*, 823 F. 2d 1510 (CA Fed. 1987), and *Fonar Corp.* v. *Johnson & Johnson*, 821 F. 2d 627 (CA Fed. 1987), can be said to have developed into a uniform practice or rule is made clear by the regularity with which they have been applied. See *Shat-R-Shield, Inc.* v. *Trojan, Inc.*, 1992 U. S. App. LEXIS 9860, *7, judgt. order reported at 968 F. 2d 1226 (CA Fed.) (nonprecedential), cert. denied, 506 U. S. 870 (1992); *Winner Int'l Corp.* v. *Wolo Mfg. Corp.*, 905 F. 2d 375, 377 (CA Fed. 1990); *Wilson Sporting Goods Co.* v. *David Geoffrey & Associates*, 904 F. 2d 677, 686 (CA Fed. 1990); *Neville Chemical Co.* v. *Resinall Corp.*, 1990 U. S. App. LEXIS 16549, judgt. order reported at 915 F. 2d 1584 (CA Fed. 1990) (nonprecedential); *Freeman* v. *Minnesota Mining and Mfg. Co.*, 13 USPQ 2d 1250, judgt. order reported at 884 F. 2d 1398 (CA Fed. 1989) (nonprecedential), cert. denied, 494 U. S. 1070 (1990); *Senmed, Inc.* v. *Richard-Allan Medical Industries, Inc.*, 888 F. 2d 815, 817 (CA Fed. 1989); *Environmental Instruments, Inc.* v. *Sutron Corp.*, 877 F. 2d 1561, 1566 (CA Fed. 1989); *Julien* v. *Zeringue*, 864 F. 2d 1569, 1571 (CA Fed. 1989); *Morton Thiokol, Inc.* v. *Argus Chemical Corp.*, 11 USPQ 2d 1152, judgt. order reported at 873 F. 2d 1451 (CA Fed. 1989) (nonprecedential); *Pfaff* v. *Wells Electronic, Inc.*, 12 USPQ 2d 1158, judgt. order reported at 884 F. 2d 1399 (CA Fed. 1989) (nonprecedential); *Specialized Electronics Corp.* v. *Aviation Supplies & Academics, Inc.*, 12 USPQ 2d 1918, judgt. order reported at 884 F. 2d 1397 (CA Fed. 1989) (nonprecedential); *Sun-Tek Industries, Inc.* v. *Kennedy Sky Lites, Inc.*, 848 F. 2d 179, 183 (CA Fed. 1988), cert. denied, 488 U. S. 1009 (1989); *Advance Transformer Co.* v. *Levinson*, 837 F. 2d 1081, 1084 (CA Fed. 1988); *Pennwalt Corp.* v. *Durand-Wayland, Inc.*, 833 F. 2d 931, 939 (CA Fed. 1987) (en banc); *Perini America, Inc.* v. *Paper Converting Machine Co.*, 832 F. 2d 581, 584, n. 1 (CA Fed. 1987). In only one published opinion after 1987, *Dana Corp.* v. *IPC Ltd. Partnership*, 860 F. 2d 415 (CA Fed. 1988), did the court address the District Court's validity determination without reaching the issue of infringement, but it did so without referring to *Vieau* or *Fonar.*

[13] See *Vieau*, 823 F. 2d, at 1518–1519 (Bennett, J., concurring); *Fonar*, 821 F. 2d, at 634.

## II

In *Electrical Fittings*, the District Court held one claim of a patent valid but not infringed.[14] The patentee was content with that judgment, but the successful defendant appealed, seeking a reversal of the finding of validity. The Court of Appeals dismissed the appeal based on the rule that a prevailing party may not appeal from a judgment in its favor. We reversed, and held that although the defendant could not compel the appellate court to revisit the finding of validity (which had become immaterial to the disposition of the case), it could demand that the finding of validity be vacated. That finding, we explained, "stands as an adjudication of one of the issues litigated. We think the petitioners were entitled to have this portion of the decree eliminated, and that the Circuit Court of Appeals had jurisdiction, as we have held this Court has, to entertain the appeal, not for the purpose of passing on the merits, but to direct the reformation of the decree." *Electrical Fittings*, 307 U. S., at 242 (footnotes omitted).

Our command that the validity decision be eliminated was similar to the Federal Circuit's mandate in the *Fonar* case (both cases suggest that an appellate court should vacate unnecessary decisions regarding patent validity), but the two cases are critically different. The issue of invalidity in *Electrical Fittings* was raised only as an affirmative defense to the charge that a presumptively valid patent had been infringed,[15] not (as in *Fonar*, and as here) as a basis for a counterclaim seeking a declaratory judgment of patent invalidity. An unnecessary ruling on an affirmative defense is not the

---

[14] "Instead of dismissing the bill without more, it entered a decree adjudicating claim 1 valid but dismissing the bill for failure to prove infringement." 307 U. S., at 242.

[15] Under 35 U. S. C. §282, all patents are presumed valid. Although that presumption is obviously resurrected after the Federal Circuit vacates a finding of invalidity, Morton's current situation makes clear that the revived presumption lacks some of its earlier strength.

same as the necessary resolution of a counterclaim for a declaratory judgment.

In *Altvater*, as here, the defendant *did* file a counterclaim seeking a declaratory judgment that the patent was invalid. The District Court found no infringement, but also granted the declaratory judgment requested by the defendant. The Court of Appeals affirmed the noninfringement holding but, reasoning that the validity issue was therefore moot, vacated the declaratory judgment. We reversed. Distinguishing our holding in *Electrical Fittings*, we wrote:

> "To hold a patent valid if it is not infringed is to decide a hypothetical case. But the situation in the present case is quite different. We have here not only bill and answer but a counterclaim. Though the decision of non-infringement disposes of the bill and answer, it does not dispose of the counterclaim which raises the question of validity. . . . [T]he issue of validity may be raised by a counterclaim in an infringement suit. The requirements of case or controversy are of course no less strict under the Declaratory Judgments Act (48 Stat. 955, 28 U. S. C. § 400) than in case of other suits. But we are of the view that the issues raised by the present counterclaim were justiciable and that the controversy between the parties did not come to an end on the dismissal of the bill for non-infringement, since their dispute went beyond the single claim and the particular accused devices involved in that suit." 319 U. S., at 363–364 (footnotes omitted; citations omitted).

Presumably because we emphasized, in the last clause quoted, the ongoing nature of the *Altvater* parties' dispute, the Federal Circuit has assumed that a defendant's counterclaim under the Declaratory Judgment Act should always be

vacated unless the parties' dispute extends beyond the terms of the patentee's charge of infringement.[16]

While both of our earlier cases are consistent with the Federal Circuit practice established in *Vieau* and *Fonar*, neither one required it. *Electrical Fittings* did not involve a declaratory judgment, and *Altvater* does not necessarily answer the question whether, in the absence of an ongoing dispute between the parties over infringement, an adjudication of invalidity would be moot. We now turn to that question.

## III

Under its current practice, the Federal Circuit uniformly declares that the issue of patent validity is "moot" if it affirms the District Court's finding of noninfringement and if, as in the usual case, the dispute between the parties does not extend beyond the patentee's particular claim of infringement. That practice, and the issue before us, therefore concern the jurisdiction of an intermediate appellate court—not the jurisdiction of either a trial court or this Court. In the trial court, of course, a party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy. *Aetna Life Ins. Co.* v. *Haworth*, 300 U. S. 227, 240–241 (1937).[17]

In patent litigation, a party may satisfy that burden, and seek a declaratory judgment, even if the patentee has not filed an infringement action. Judge Markey has described

> "the sad and saddening scenario that led to enactment of the Declaratory Judgment Act (Act), 28 U. S. C. § 2201. In the patent version of that scenario, a patent owner engages in a *danse macabre*, brandishing a Dam-

---

[16] See *Vieau*, 823 F. 2d, at 1518–1521 (Bennett, J., concurring); *Fonar*, 821 F. 2d, at 634, and n. 2.

[17] As we have noted, the Declaratory Judgment Act affords the district court some discretion in determining whether or not to exercise that jurisdiction, even when it has been established. See *Brillhart* v. *Excess Ins. Co. of America*, 316 U. S. 491, 494–496 (1942).

oclean threat with a sheathed sword. . . . Before the Act, competitors victimized by that tactic were rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue. After the Act, those competitors were no longer restricted to an *in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests. The sole requirement for jurisdiction under the Act is that the conflict be real and immediate, i. e., that there be a true, actual 'controversy' required by the Act." *Arrowhead Industrial Water, Inc.* v. *Ecolochem, Inc.*, 846 F. 2d 731, 734–735 (CA Fed. 1988) (citations omitted).

Merely the desire to avoid the threat of a "scarecrow" patent, in Learned Hand's phrase,[18] may therefore be sufficient to establish jurisdiction under the Declaratory Judgment Act. If, in addition to that desire, a party has actually been charged with infringement of the patent, there is, *necessarily*, a case or controversy adequate to support jurisdiction of a complaint, or a counterclaim, under the Act. In this case, therefore, it is perfectly clear that the District Court had jurisdiction to entertain Cardinal's counterclaim for a declaratory judgment of invalidity.

It is equally clear that the Federal Circuit, even after affirming the finding of noninfringement, had *jurisdiction* to consider Morton's appeal from the declaratory judgment of invalidity. A party seeking a declaratory judgment of invalidity presents a claim independent of the patentee's charge of infringement. If the District Court has jurisdiction (established independently from its jurisdiction over the patentee's charge of infringement) to consider that claim, so does (barring any intervening events) the Federal Circuit.

---

[18] *Bresnick* v. *United States Vitamin Corp.*, 139 F. 2d 239, 242 (CA2 1943).

There are two independent bases for this conclusion. First, the Federal Circuit is not a court of last resort. If that court had jurisdiction while the case was pending before it, the case remains alive (barring other changes) when it comes to us. The Federal Circuit's determination that the patents were not infringed is subject to review in this Court, and if we reverse that determination, we are not prevented from considering the question of validity merely because a lower court thought it superfluous. As a matter of practice, the possibility that we would grant certiorari simply to review that court's resolution of an infringement issue is extremely remote, but as a matter of law we could do so, and if we did, we could also reach the declaratory judgment, as long as the parties continued to dispute the issue of validity, as they do here.[19] As this case demonstrates, nothing prevents us, as a jurisdictional matter, from reviewing the Federal Circuit's disposition (even its vacatur) of the District Court's resolution of the declaratory judgment counterclaim.

---

[19] Commenting on *Electrical Fittings*, in *Deposit Guaranty Nat. Bank v. Roper*, 445 U. S. 326, 335 (1980), we wrote: "Although the Court limited the appellate function to reformation of the decree, the holding relevant to the instant case was that the federal courts retained jurisdiction over the controversy notwithstanding the District Court's entry of judgment in favor of petitioners. This Court had the question of mootness before it, yet because policy considerations permitted an appeal from the District Court's final judgment and because petitioners alleged a stake in the outcome, the case was still live and dismissal was not required by Art. III. The Court perceived the distinction between the definitive mootness of a case or controversy, which ousts the jurisdiction of the federal courts and requires dismissal of the case, and a judgment in favor of a party at an intermediate stage of litigation, which does not in all cases terminate the right to appeal." See also 959 F. 2d, at 953 (Lourie, J., concurring) ("[B]ecause this court is not a court of last resort, a holding of either invalidity or noninfringement by our court does not render the case moot because it is not over. Therefore, when both infringement and validity issues are presented on appeal, we can base our affirmance on both grounds, thereby leaving a complete judgment available for review by the Supreme Court").

Second, while the initial burden of establishing the trial court's jurisdiction rests on the party invoking that jurisdiction, once that burden has been met courts are entitled to presume, absent further information, that jurisdiction continues. If a party to an appeal suggests that the controversy has, since the rendering of judgment below, become moot, that party bears the burden of coming forward with the subsequent events that have produced that alleged result. See *United States* v. *W. T. Grant Co.*, 345 U. S. 629, 633 (1953).[20] In this case Cardinal properly invoked the original jurisdiction of the District Court, and Morton properly invoked the appellate jurisdiction of the Federal Circuit. That court unquestionably had the power to decide all the issues raised on Morton's appeal. If, before the court had decided the case, either party had advised it of a material change in circumstances that entirely terminated the party's controversy, it would have been proper either to dismiss the appeal or to vacate the entire judgment of the District Court. Cf. *United States* v. *Munsingwear, Inc.*, 340 U. S. 36, 39 (1950). In fact, however, there was no such change in this case. The Federal Circuit's decision to rely on one of two possible alternative grounds (noninfringement rather than invalidity) did not strip it of *power* to decide the second question, particularly when its decree was subject to review by this Court. Even if it may be good practice to decide no more than is necessary to determine an appeal, it is clear that the Federal Circuit had jurisdiction to review the declaratory judgment of invalidity. The case did not become moot when that court affirmed the finding of noninfringement.

---

[20] To the extent that the Federal Circuit, relying on Judge Bennett's concurrence in *Vieau,* see n. 10, *infra,* would have imposed the burden on Cardinal to show that jurisdiction over its counterclaim, once established in the District Court, continued to attach before the Court of Appeals, it would therefore have been in error. Bearing the initial burden of establishing jurisdiction is different from establishing that it has disappeared.

## IV

The Federal Circuit's practice is therefore neither compelled by our cases nor supported by the "case or controversy" requirement of Article III. Of course, its practice might nevertheless be supported on other grounds. The courts of appeals have significant authority to fashion rules to govern their own procedures. See, *e. g., Ortega-Rodriguez* v. *United States*, 507 U. S. 234, 244, 246, 249–250 (1993); *Thomas* v. *Arn*, 474 U. S. 140, 146–148 (1985). Just as we have adhered to a practice of deciding cases on statutory rather than constitutional grounds when both alternatives are available, see, *e. g., Edward J. DeBartolo Corp.* v. *Florida Gulf Coast Building and Construction Trades Council*, 485 U. S. 568, 575 (1988), there might be a sufficient reason always to address the infringement issue before passing on the patent's validity. If, for example, the validity issues were generally more difficult and time consuming to resolve, the interest in the efficient management of the court's docket might support such a rule.

Although it is often more difficult to determine whether a patent is valid than whether it has been infringed, there are even more important countervailing concerns. Perhaps the most important is the interest of the successful litigant in preserving the value of a declaratory judgment that, as Chief Judge Nies noted, "it obtained on a valid counterclaim at great effort and expense."[21]   A company once charged with

---

[21] 967 F. 2d 1521, 1577 (CA Fed. 1992) (Nies, C. J., dissenting from denial of rehearing en banc). As she added in a footnote: "Nor should we be unmindful of the expense and effort of the district court. Judge Avern Cohn of the Eastern District of Michigan (the *Vieau* trial judge) stated, in a panel discussion at our most recent Judicial Conference: 'I took six months to write a JNOV, found the patent invalid and not infringed and was very proud of my work product. And when I read that court of appeals opinion and found that my finding of invalidity had been vacated, there was no case or controversy, I was in a state of shock for ten minutes.' Cohn, Remarks at the Patent Breakout Session of the Tenth Annual Judi-

infringement must remain concerned about the risk of similar charges if it develops and markets similar products in the future. Given that the burden of demonstrating that changed circumstances provide a basis for vacating the judgment of patent invalidity rests on the party that seeks such action, there is no reason why a successful litigant should have any duty to disclose its future plans to justify retention of the value of the judgment that it has obtained.[22]

Moreover, our prior cases have identified a strong public interest in the finality of judgments in patent litigation. In *Sinclair & Carroll Co.* v. *Interchemical Corp.*, 325 U. S. 327 (1945), we approved of the District Court's decision to consider the question of validity even though it had found that a patent had not been infringed. Criticizing the contrary approach taken by other courts, we stated that "of the two questions, validity has the greater public importance, *Cover* v. *Schwartz*, 133 F. 2d 541 [(CA2 1943)], and the District Court in this case followed what will usually be the better practice by inquiring fully into the validity of this patent." *Id.*, at 330.

We also emphasized the importance to the public at large of resolving questions of patent validity in *Blonder-Tongue Laboratories, Inc.* v. *University of Ill. Foundation*, 402 U. S. 313 (1971). In that case we overruled *Triplett* v. *Lowell*, 297 U. S. 638 (1936), which had held that a determination of patent invalidity does not estop the patentee from relitigating the issue in a later case brought against another alleged infringer. We also commented at length on the wasteful

cial Conference of the United States Court of Appeals for the Federal Circuit 65 (April 30, 1992)." *Id.*, at 1577, n. 9.

[22] *Altvater* cannot be read to require such a disclosure. In that case, the counterclaimant was a licensee, and there was no question but that its obligations to the patentee would continue unless the patent were found invalid. Our holding did not depend on that fact, however, and we nowhere stated that a counterclaimant could seek the affirmance of a declaratory judgment only if it ensured that its future actions would continue to violate the patentee's alleged rights.

consequences of relitigating the validity of a patent after it has once been held invalid in a fair trial,[23] and we noted the danger that the opportunity to relitigate might, as a practical matter, grant monopoly privileges to the holders of invalid patents.[24]   As this case demonstrates, the Federal Circuit's practice of routinely vacating judgments of validity after finding noninfringement creates a similar potential for relitigation and imposes ongoing burdens on competitors who are convinced that a patent has been correctly found invalid.

Indeed, as Morton's current predicament illustrates, see *supra,* at 89, the Federal Circuit's practice injures not only

[23] "In any lawsuit where a defendant, because of the mutuality principle, is forced to present a complete defense on the merits to a claim which the plaintiff has fully litigated and lost in a prior action, there is an arguable misallocation of resources.   To the extent the defendant in the second suit may not win by asserting, without contradiction, that the plaintiff had fully and fairly, but unsuccessfully, litigated the same claim in the prior suit, the defendant's time and money are diverted from alternative uses—productive or otherwise—to relitigation of a decided issue.   And, still assuming that the issue was resolved correctly in the first suit, there is reason to be concerned about the plaintiff's allocation of resources.   Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or 'a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure.'   *Kerotest Mfg. Co.* v. *C-O-Two Co.,* 342 U. S. 180, 185 (1952)."   402 U. S., at 329.

[24] "In each successive suit the patentee enjoys the statutory presumption of validity, and so may easily put the alleged infringer to his expensive proof.   As a consequence, prospective defendants will often decide that paying royalties under a license or other settlement is preferable to the costly burden of challenging the patent." *Id.,* at 338.

"The tendency of *Triplett* to multiply the opportunities for holders of invalid patents to exact licensing agreements or other settlements from alleged infringers must be considered in the context of other decisions of this Court.   Although recognizing the patent system's desirable stimulus to invention, we have also viewed the patent as a monopoly which, although sanctioned by law, has the economic consequences attending other monopolies.   A patent yielding returns for a device that fails to meet the congressionally imposed criteria of patentability is anomalous." *Id.,* at 342–343 (footnotes omitted).

the alleged infringer and the public; it also may unfairly deprive the patentee itself of the appellate review that is a component of the one full and fair opportunity to have the validity issue adjudicated correctly. If, following a finding of noninfringement, a declaratory judgment on validity is routinely vacated, whether it invalidated the patent (as in *Vieau*) or upheld it (as in *Fonar*), the patentee may have lost the practical value of a patent that should be enforceable against different infringing devices. The Federal Circuit's practice denies the patentee such appellate review, prolongs the life of invalid patents, encourages endless litigation (or at least uncertainty) over the validity of outstanding patents, and thereby vitiates the rule announced in *Blonder-Tongue*.[25]

In rejecting the Federal Circuit's practice we acknowledge that factors in an unusual case might justify that court's refusal to reach the merits of a validity determination—a determination which it might therefore be appropriate to vacate. A finding of noninfringment alone, however, does not justify such a result. Nor does anything else in the record of this case. The two patents at issue here have been the subject of three separate lawsuits, and both parties have

---

[25] The Federal Circuit's practice has been the subject of a good deal of scholarly comment, all of which has consistently criticized the practice. See R. Harmon, Patents and The Federal Circuit 551–554 (2d ed. 1991); Wegner, *Morton*, The Dual Loser Patentee: Frustrating *Blonder-Tongue*, 74 J. Pat. & Tm. Off. Soc. 344 (1992) ("A dual loser patentee at a trial court who fails both on infringement and validity and then loses at the Federal Circuit on infringement is given the judicial blessing of that appellate tribunal to sue and sue again against third parties, to the extent the invalidity ruling is vacated under *Vieau*"); Re & Rooklidge, Vacating Patent Invalidity Judgments Upon an Appellate Determination of Noninfringement, 72 J. Pat. & Tm. Off. Soc. 780 (1990). See also Donofrio, The Disposition of Unreviewable Judgments by the Federal Circuit, 73 J. Pat. & Tm. Off. Soc. 462, 464 (1991) ("[T]he Federal Circuit's present practice of vacating such judgments [even if it correctly considers them unreviewable] should not continue because it permits litigants to destroy the conclusiveness of invalidity holdings").

urged the Federal Circuit to resolve their ongoing dispute over the issue of validity; it would be an abuse of discretion not to decide that question in this case. Accordingly, the judgment of the Court of Appeals is vacated, and the case is remanded to that court for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE SCALIA, with whom JUSTICE SOUTER joins, concurring in part and concurring in the judgment.

I agree that the Federal Circuit erred in holding that the invalidity claim became moot once it was determined that the patent had not been infringed. Moreover, though the Federal Circuit had discretion to reach (or not to reach) respondent's appeal of the declaratory judgment ruling, it was an abuse of discretion to decline to reach it for that erroneous "mootness" reason—constituting, in effect, a failure to exercise *any discretion at all.* I therefore join the judgment of the Court, and all of its opinion except Part IV.

In Part IV the Court determines that, upon remand, the Federal Circuit may not, *"on other grounds," ante,* at 99 (emphasis added), continue its practice of declining review in these circumstances, set out in *Vieau* v. *Japax, Inc.,* 823 F. 2d 1510 (1987). That point is much less tied to general principles of law with which I am familiar, and much more related to the peculiarities of patent litigation, with which I deal only sporadically. It need not be reached to decide this case, and I am unwilling to reach it because of the lack of adversary presentation.

The lack of adversariness was frankly acknowledged at oral argument. See, *e. g.,* Tr. of Oral Arg. 25, 37 ("On the limited issue before this Court, where there is a declaratory judgment held, we do not have any difference whatsoever"). Petitioners and respondent disagree only as to some hypothetical applications of the Federal Circuit's reviewing authority—applications clearly outside the facts of this case—

and are in utter agreement concerning the invalidity of the *Vieau* practice. The briefs starkly reflect this uniformity: Respondent's brief, in a mere 10 pages of argument, essentially incorporates by reference much of petitioners' brief, which in turn largely reflects Chief Judge Nies' dissent from the denial of en banc review below. Brief for Respondent 8–9. (Not surprisingly, petitioners did not bother to file a reply brief responding to their own echo.) *Amici* likewise all weighed in on the single side in this case, one of them even identifying its submission as "in support of petitioners & respondents." Brief for Federal Circuit Bar Association as *Amicus Curiae*. While this harmony is heartwarming and even (since it reduces the number and length of briefs) environmentally sound, it may encourage us to make bad law.

In the past, when faced with a complete lack of adversariness, we have appointed an *amicus* to argue the unrepresented side. See, *e. g.*, *Toibb* v. *Radloff*, 501 U. S. 157, 160, n. 4 (1991); *Bob Jones Univ.* v. *United States*, 461 U. S. 574, 585, n. 9, 599, n. 24 (1983); *Granville-Smith* v. *Granville-Smith*, 349 U. S. 1, 4 (1955). Cf. *INS* v. *Chadha*, 462 U. S. 919, 939–940 (1983). The wisdom of that course is shown by *Cheng Fan Kwok* v. *INS*, 392 U. S. 206, 210 (1968). That case, like this one, involved a Court of Appeals' refusal to decide—the Third Circuit's determination that it lacked jurisdiction to review the INS's denial of petitioner's application for a stay of deportation. And in that case, as in this one, both parties agreed that the Court of Appeals *should* have decided the case. We appointed an *amicus* to defend the judgment below, *id.*, at 210, n. 9, and ended up *affirming* the determination rejected by the parties.

I agree with the Court that the parties' total agreement as to disposition of this case poses no constitutional barrier to its resolution. *Ante*, at 88–89, n. 9. For prudential reasons, however, I would frame the resolution more narrowly. I can say with confidence that the question of the validity of

the patent is not moot, so that mootness was an impermissible ground for failing to decide validity. It seems to me that is enough for us to determine for the moment. If supposed mootness was in fact the only support for the *Vieau* policy, the Federal Circuit will abandon it and we will never see the issue again. If, however, there is some other support, we should hear about it from counsel before we reject the policy out of hand.

The issue of discretionary refusal (as opposed to the issue of mootness) is, it seems to me, more than usually deserving of adversary presentation. It involves the practicalities of the Federal Circuit's specialized patent jurisdiction, rather than matters of statutory or constitutional interpretation with which we are familiar. The opinions of the Federal Circuit do not discuss the practical benefits of the *Vieau* practice, nor can we find them discussed in the opinions of other courts, the Federal Circuit's jurisdiction over patent appeals being exclusive, see 28 U. S. C. § 1295(a). One must suspect, however, that some practical benefits exist, since despite the fragility of the "mootness" jurisdictional justification that we reject today, *Vieau* has enlisted the support of the experienced judges on the Federal Circuit—who denied en banc review despite criticism of *Vieau* in Chief Judge Nies' opinion dissenting from the denial, 967 F. 2d 1571 (1992), and in Judge Lourie's panel concurrence, 959 F. 2d 948, 952 (1992).

For these reasons, I concur in the judgment of the Court, and join all of its opinion except Part IV.