**NOBELPHARMA AB, Plaintiff,**

v.

**IMPLANT INNOVATIONS, INC., Defendant.**

**No. 91 C 4632.**

United States District Court, N.D. Illinois, Eastern Division.

Jan. 31, 1995.

Alan I. Becker, Daniel G. Litchfield, Douglas B. Harper, Burditt & Radzius, Chicago, IL, Douglas E. Olson and Jeffrey M. Olson, Lyon & Lyon, Los Angeles, CA, for plaintiff Nobelpharma AB, a Swedish corp.

Edward L. Foote, Peter Charles McCabe, III, Winston & Strawn, Gomer Winston Walters, James Ray Wood, Steven J. Soucar, Wood, Phillips, VanSanten, Hoffman & Ertel, Stephen Gary Rudisill, Arnold, White & Durkee, Chicago, IL, Philip G. Koenig, Jason M. Honeyman, Wolf, Greenfield & Sacks, P.C., Boston, MA, for defendant Implant Innovations, Inc.

Alan I. Becker, Burditt & Radzius, Chicago, IL, for counter-defendant Nobelpharma USA Inc.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

On May 10, 1994, out of an abundance of caution, we held a conference with the parties to this suit and suggested to them that, to bring solid closure to the preceding patent trial, we may need to rule on the outstanding issue of inequitable conduct. At the conference, we asked the parties to brief us on whether such a ruling would be appropriate.

Accordingly, on May 12, 1994, Implant Innovations, Inc. ("3i"), submitted a brief requesting that we rule on the issue and produce findings of fact and conclusions of law to accompany our ruling. On the same day, Nobelpharma AB ("Nobelpharma") submitted its response. In June, 3i submitted its proposed findings and conclusions, and, again, Nobelpharma submitted its response. For the reasons discussed below, we deny 3i's (prompted) request for a ruling on inequitable conduct and, consequently, also deny its (prompted) request that we produce findings of fact and conclusions of law. Instead, pursuant to Fed.R.Civ.P. 58, we enter final judgment on the jury verdict in favor of 3i in the amount of $9,904,737.

### I. Background

On July 23, 1991, Nobelpharma sued 3i, alleging infringement of U.S. Patent Number 4,330,891 ("the '891 patent"), which concerns a dental implant. 3i raised numerous affirmative defenses, including: (1) non-compliance with 35 U.S.C. § 101; (2) non-compliance with 35 U.S.C. § 102; (3) non-compliance with 35 U.S.C. § 103; (4) non-compliance with 35 U.S.C. § 112; (5) inequitable conduct; and (6) misuse. Further, 3i sought declaratory relief that the '891 patent was "invalid, void, . . . not infringed[, and] . . . not enforceable" for the reasons it raised in its affirmative defenses. Def.Am.Answer at ¶ 20. Further still, 3i counterclaimed, alleging that Nobelpharma violated antitrust laws.

On March 14, 1994, the case went to jury trial, which began with Nobelpharma's presentation of its infringement claim. At the close of Nobelpharma's case in chief, 3i moved pursuant to Fed.R.Civ.P. 50(a) for judgement as a matter of law on the issues of infringement and validity. On April 8 and 11, we granted 3i's motion. Immediately afterward, we proceeded with 3i's antitrust counterclaim. The jury returned a verdict in favor of 3i in the amount of $9,904,737.

### II. Discussion

■ 3i argues that, "[p]ursuant to the Supreme Court's decision in *Cardinal Chemical Co. v. Morton Int'l, Inc.,* —— U.S. ——, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993), [we] should decide whether the '891 patent is unenforceable on grounds of inequitable conduct for important public policy reasons." Def.Br. at 1–2. Interpreting *Cardinal,* 3i states that "there is a valid and important public policy consideration in having all of the issues decided, including validity and unenforceability,

even if the plaintiff has not proved infringement." Def.Br. at 5. Moreover, "[t]he same public policy considerations apply here in the sense that the Federal circuit should review the entire case." Def.Br. at 5–6.

Nobelpharma responds that *Cardinal* "provides no suggestion that there are important public policy reasons for determining that an invalid patent is unenforceable on the grounds of inequitable conduct." Pl.Br. at 4, n. 2. "The benefits recognized by the Supreme Court in *Cardinal* for preserving an invalidity determination when there is no infringement are not present here where the patent has been held invalid and the inequitable conduct issue is unresolved." *Id.*

In *Cardinal,* the Court considered the Federal Circuit's "routine[ ]" "practice" of "vacating declaratory judgments regarding patent validity following a determination of noninfringement." —— U.S. at ——, 113 S.Ct. at 1971. After finding that the "Federal Circuit's practice [was] ... neither compelled by [common law] nor supported by the 'case and controversy' requirement," the Court held that "[a] finding of non-infringement alone ... does not justify" "refus[ing]" to reach the merits of a validity determination." *Id.* at ——–——, 113 S.Ct. at 1976, 1978.

The Court found that three policy concerns supported its holding. First, it found that unless courts make a validity determination, defendants may suffer because "[a] company once charged with infringement [would] remain concerned about the risk of similar charges if it develop[ed] and market[ed] similar products in the future." *Id.* at ——, 113 S.Ct. at 1976–7. Second, unless courts make the determination, plaintiffs may suffer because "patentee[s] [would] lo[se] the practical value of a patent that should be enforceable against different infringing devices." *Id.* at ——, 113 S.Ct. at 1978. Third, without the determination, society may suffer because of the "strong public interest in the finality of judgments in patent litigation." *Id.* at ——, 113 S.Ct. at 1977. In its subsequent discussion about finality, the Court discussed the importance of making a validity determination. *Id.* at ——, 113 S.Ct. at 1977–8.

Unlike in *Cardinal,* in this case we made an infringement and validity determination and, in a sense, vacated the enforcement determination. This case, then, is *Cardinal* in reverse. The issue is whether, with the determinations reversed, this case still implicates the Court's policy concerns.

All of the Court's concerns, even the one about finality of judgments, contemplate the post-litigation interests of the parties. Specifically, they contemplate the parties' interest in knowing the scope of their property rights. As the Court indicated, making a validity determination goes a long way toward defining the scope of those rights. After that, however, making an enforcement determination goes no extra distance at all. If the patent is invalid, of course it is unenforceable. The issue is moot. *Clements Indus. v. Meyers & Sons Corp.,* 712 F.Supp. 317, 320, n. 2 (S.D.N.Y.1989) (stating that "[o]ur conclusion that the patent is invalid because of obviousness and anticipation makes it unnecessary to determine [the] inequitable conduct [issue]"); *see Paragon Podiatry Lab., Inc. v. KLM Labs.,* 984 F.2d 1182, 1188, n. 6 (Fed.Cir.1993); *Buildex, Inc. v. Kason Indus., Inc.,* 849 F.2d 1461, 1466 (Fed.Cir.1988); *see also United Carbon Co. v. Binney Co.,* 317 U.S. 228, 237, 63 S.Ct. 165, 170, 87 L.Ed. 232 (1942) (holding that "[w]e are of the opinion that the claims in litigation are bad for indefiniteness, and we have no occasion to consider questions of novelty, invention, and infringement"). Therefore, if courts make a validity determination and not an enforcement determination, they do not implicate the *Cardinal* policy concerns.

■ The Federal Circuit announced one exception to the rule that a validity determination moots an enforcement determination. In *Buildex,* the court stated that, "[a]lthough this [inequitable conduct] issue may appear moot in view of our holding that the '265 patent is invalid ..., the question of Holden's and Buildex's conduct in the procurement of the patent is still relevant to Kason's request for attorney fees." 849 F.2d at 1466; *see Paragon,* 984 F.2d at 1188, n. 6 (stating that "[t]his issue of [inequitable conduct] is not mooted by our decision holding that the patent is invalid in view of KLM's motion for

attorney fees"). The Federal Circuit announced the exception because the inequitable conduct issue may bear on whether the case is "exceptional," which is part of the attorney fee inquiry. *Id.*

Despite 3i's motion for attorney fees, this case does not fall under the Circuit's exception. At trial, the jury found that Nobelpharma acted fraudulently. Given the jury's finding, already we can determine whether this case is "exceptional." *See, e.g., Stevens & Co. v. Lex Tex Ltd., Inc.,* 747 F.2d 1553, 1559 (Fed.Cir.1984), *cert. denied,* 474 U.S. 822, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985) (noting that inequitable "[c]onduct before the [Patent and Trademark Office] ... is broader than 'common law fraud' "). Therefore, the inequitable conduct issue remains moot.

Going beyond the Court's policy concerns in *Cardinal,* 3i argues that, for reasons of judicial economy, we should decide whether the '891 patent is unenforceable. "It is not in the interest of judicial economy or the parties, particularly having in mind the expense of this litigation, to have a piecemeal or staggered consideration of these issues." Def.Br. at 4. Because the jury found fraud under the antitrust counterclaim, fraud requires a higher burden of proof than inequitable conduct, and inequitable conduct provides an independent ground for having a patent declared unenforceable, we should rule on the issue. *Id.* at 4–5.

Nobelpharma responds that our interest in judicial economy should not blind us to other important issues. First, Nobelpharma argues that 3i "agreed [at trial] to the deletion of inequitable conduct from any further proceedings."[1] Pl.Br. at 2. Second, it argues that "[i]t would be error ... to determine that inequitable conduct exists merely because of the jury determination that the inventors ... obtained the '891 patent through fraud." Pl.Br. at 4, n. 2. Third, it argues that, if we did make the determination, we would violate its Seventh Amendment rights. Pl.Br. at 2.

We do not decide the merits of Nobelpharma's arguments because, in any event, we do not agree with 3i that we should rule for reasons of judicial economy. Ruling on moot issues does not improve judicial economy. Moreover, ruling on moot issues for fear that an appellate court might reverse other dispositive rulings does not improve judicial dignity.

### III. Conclusion

For the reasons discussed above, we deny 3i's (prompted) request that we rule on the issue of inequitable conduct and produce findings of fact and conclusions of law. Instead, pursuant to Rule 58, we enter final judgment in this case.

### JUDGMENT IN A CIVIL CASE

This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED The court denies 3i's (prompted) request that we rule on the issue of inequitable conduct and proposed findings of fact and conclusions of law. Instead, pursuant to Rule 58, we enter final judgment on this case in the amount of $9,904,737.

---

1. In fact, 3i may not have waived the issue. It stated:

   "[I]f the jury finds for us on our antitrust case, I suggest ... that that would automatically end any issue regarding inequitable conduct because the degree of proof required to prove fraud on the Patent Office under an antitrust case is greater than the degree of proof needed to simply prove inequitable conduct ..." Tr. at 2311. Contrary to Nobelpharma's argument, 3i's statement is likely consistent with its position here, that the jury's finding of fraud should, without more, lead us to find inequitable conduct.