**SL WABER, INC., Plaintiff,**

v.

**AMERICAN POWER CONVERSION CORPORATION, Defendant and Third–Party Plaintiff,**

v.

**Alex J. Severinsky, Third–Party Defendant.**

**No. Civ.A. 97–4048 JBS.**

United States District Court, D. New Jersey.

March 22, 1999.

Arnold B. Calmann, Saiber Schlesinger Satz & Goldstein, Newark, NJ, Herbert F. Schwartz, Thomas L. Gianetti, Fish & Neave, New York City, for plaintiff.

Raymond M. Tierney, Jr., Shanley & Fisher, Morristown, NJ, Edgar H. Martin, Kevin E. Joyce, Pillsbury Madison & Sutro LLP, Washington, DC, for defendant/third-party plaintiff.

## OPINION

SIMANDLE, District Judge.

This matter is before the court on the motion of plaintiff, SL Waber, Inc. ("Waber"), to dismiss the counterclaim of defendant, American Power Conversion Corporation ("APC"), for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), insofar as APC seeks a declaratory judgment that U.S.Patent No. 5,458,991 ("the '991 patent") is invalid, unenforceable and not infringed, and for leave to file an Amended Complaint, under Federal Rule of Civil Procedure 15(a), to delete its claim of infringement of the '991 patent.

Because the court finds that it lacks subject matter jurisdiction over APC's counterclaim to the extent APC seeks a declaratory judgment that the '991 patent is unenforceable, invalid and not infringed, as a result of Waber's filing of a Statement of Nonliability and Covenant Not to Sue and a Supplemental Statement of Nonliability and Covenant Not to Sue, in which Waber unconditionally covenants, promises and agrees not to sue APC for any past, present or future infringement of the '991 patent by any past, present or future APC product, the court grants Waber's motion to dismiss. The court also grants Waber's motion for leave to file an Amended Complaint deleting its claim of infringement of the '991 patent, without requiring Waber

to reimburse APC for the attorneys' fees APC incurred in defending against that claim.

Additionally, because the court's decision to grant Waber's motions eliminates all issues pertaining to the '991 patent from this case, and because all discovery and motion practice pertaining to U.S.Patent No. 5,440,179 ("the '179 patent") is stayed, pursuant to the court's August 7, 1998 Order, pending the outcome of the ongoing reexamination of that patent by the U.S.Patent and Trademark Office ("PTO"), the court will administratively terminate this action subject to the right of either party to move to reopen the case within thirty (30) days after the PTO's completion of its reexamination of the '179 patent.

### BACKGROUND

Waber is the owner the '179 patent, entitled "UPS with Bidirectional Power Flow," and the '991 patent, entitled "UPS with Auto Self Test." See footnote 1 [1] On August 12, 1997, Waber filed a Complaint alleging that APC's Back UPS Office product infringes both the '179 and '991 patents.

On October 9, 1997, APC filed an Answer and Counterclaim. In the Counterclaim, APC sought a declaratory judgment that the '179 and '991 patents are invalid and were not infringed. Waber filed a Reply to APC's Counterclaim on October 24, 1997.

After Magistrate Judge Robert B. Kugler signed a Stipulation and Order on January 12, 1998 providing for the protection and exchange of certain confidential information, the parties completed discovery. On May 1, 1998, APC filed a First Amended Answer, Amended Declaratory Judgment Counterclaim and Third–Party Complaint. In the Amended Declaratory Judgment Counterclaim, APC seeks a declaration that the '179 and '991 patents are each unenforceable, in addition to being invalid and not infringed, and also seeks an award of attorneys' fees under 35 U.S.C. § 285. APC alleges that Waber and the inventor of the '179 and '991 patents, Alex J. Severinsky, engaged in inequitable conduct in prosecuting the '991 patent before the PTO. APC named Severinsky as a third-party defendant.

On May 26, 1998, Waber filed a Reply to the Amended Counterclaim along with a Statement of Nonliability and Covenant Not to Sue. In the Statement of Nonliability and Covenant Not to Sue, dated May 26, 1998, Waber unconditionally covenanted, promised and agreed not to sue APC for any infringement of the '991 patent based on any product or product line made, used, offered for sale or imported into the United States by APC on or before May 26, 1998. That same day, Waber served APC with its motion to dismiss APC's counterclaim as it relates to the '991 patent and for leave to file an Amended Complaint deleting its claim of infringement of the '991 patent.

On June 25, 1998, all briefing on Waber's motion to dismiss and motion for leave to file an Amended Complaint having been completed, Waber filed the full motion package with the court in accordance with Local Civil Rule 7.1(f), along with a Supplemental Statement of Nonliability and Covenant Not to Sue, dated June 25, 1998, in which Waber covenants, promises and agrees not to sue APC for any in-

1. *"UPS" stands for "uninterruptable power supply". A UPS is an electrical device that contains a rechargeable battery and is connected between a load (e.g., a computer) and an AC power source. In the event of failure of the AC power, the battery of the UPS automatically provides power to the load for a limited time period.*

fringement of the '991 patent based on any present or future products made, used, offered for sale or imported into the United States by APC.

On July 14, 1998, APC filed a request in the PTO for reexamination of the '179 patent. In light of that request, by letter dated July 27, 1998, Waber applied for a stay of all proceedings in this case pending the outcome of the request for reexamination of the '179 patent. By Order dated August 7, 1998, the court, finding that all discovery and motion practice pertaining to the '179 patent should be stayed pending the outcome of APC's request for reexamination of that patent by the PTO and that all discovery pertaining to the '991 patent should be stayed pending the court's decision on the instant motion to dismiss and for leave to amend, stayed all discovery in the case until further Order of the court.

By Order dated September 3, 1998, the PTO granted APC's request for reexamination of the '179 patent. The PTO's reexamination of the '179 patent is still ongoing.

## DISCUSSION

■ "A declaratory judgment counterclaim ... may be brought to resolve an 'actual controversy' between 'interested' parties." *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058 (Fed. Cir.1995), *cert. denied*, 516 U.S. 1093, 116 S.Ct. 815, 133 L.Ed.2d 760 (1996) (quoting 28 U.S.C. § 2201(a)). "The existence of a sufficiently concrete dispute between the parties remains, however, a jurisdictional predicate to the vitality of such an action." *Id.* "Indeed, 'an actual controversy must be extant at all stages of review, not merely at the time the [counterclaim] is filed.'" *Id.* (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975)). The burden is on the declaratory

judgment plaintiff to establish that jurisdiction over the declaratory judgment counterclaim existed at the time of filing and continues to exist at later stages of the litigation. *Id.* (citing *International Med. Prosthetics Research Assocs. v. Gore Enter. Holdings, Inc.*, 787 F.2d 572, 575 (Fed. Cir.1986)).

■ The U.S. Court of Appeals for the Federal Circuit has developed a two-part test for assessing the justiciability of declaratory judgment actions involving the enforceability, validity or infringement of patent rights:

There must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity.

*Id.* (quoting *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed.Cir. 1993)). The purpose of this test is " 'to determine whether the need for judicial attention is real and immediate,' in which case the federal courts have jurisdiction, or whether it is 'prospective and uncertain of occurrence,' in which case they do not." *Id.*

■ "[A] patentee defending against an action for a declaratory judgment of invalidity can divest the trial court of jurisdiction over the case by filing a covenant not to assert the patent at issue against the putative infringer with respect to any of its past, present or future acts." *Id.* (citing *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 636–38 (Fed.Cir.), *cert. denied*, 502 U.S. 1013, 112 S.Ct. 658, 116 L.Ed.2d 749 (1991)). Thus, in *Super Sack*, the Federal Circuit affirmed a district court's decision to grant a patentee's motion to dismiss an alleged infringer's de-

claratory judgment counterclaim with prejudice for lack of subject matter jurisdiction and to deny the alleged infringer's motion to amend its counterclaim to assert a claim that the patent at issue was unenforceable due to inequitable conduct by the patentee, based on the patentee's unconditional promise not to sue the alleged infringer on the patents-in-suit in the future in connection with any product then manufactured and sold by the alleged infringer, finding that the patentee's covenant not to sue "precludes the existence of an actual controversy." *Id.* at 1055.

Waber contends that *Super Sack* dictates the outcome of its motion to dismiss APC's counterclaim for a declaratory judgment that the '991 patent is unenforceable, invalid and not infringed. The court agrees, finding no merit in any of APC's attempts to distinguish *Super Sack* from the case at bar.

■ First, Waber's motion is not governed by Federal Rule of Civil Procedure 41(a)(2), as APC maintains. By its own terms, Rule 41(a)(2) applies only when an entire action is dismissed, not when less than all claims in an action are dismissed. *See Gronholz v. Sears, Roebuck & Co.,* 836 F.2d 515, 518 (Fed.Cir.1987). Indeed, the court in *Super Sack* acknowledged that the district court's reliance on Rule 41(a)(2) was misplaced and that Rule 41(a)(2) did not prohibit the district court from dismissing the alleged infringer's counterclaim for lack of subject matter jurisdiction. *Super Sack,* 57 F.3d at 1057, n. 1 and 2.

Second, there is no independent jurisdictional basis for APC's counterclaim for a declaratory judgment that the '991 patent is unenforceable, invalid and not infringed, as APC maintains. Waber's Supplemental Statement of Nonliability and Covenant Not to Sue, coupled with the original Statement of Nonliability and Covenant Not to Sue, eliminates any concern APC could have about the threat of future patent infringement litigation by Waber under the '991 patent involving any past, present or future APC product. This blanket immunity from future patent infringement litigation concerning the '991 patent renders the likelihood of such future litigation far slimmer than the "residual possibility of a future infringement suit based on [the alleged infringer's] future acts" that the court in *Super Sack* found "too speculative a basis for jurisdiction over [the] counterclaim for declaratory judgments of invalidity." *Id.* at 1060. Furthermore, the court in *Super Sack* rejected the argument that the Supreme Court's decision in *Cardinal Chem. Co. v. Morton. Int'l,* 508 U.S. 83, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993), provides an independent jurisdictional basis for a counterclaim seeking a declaratory judgment of patent invalidity under the circumstances of this case. The Federal Circuit construed *Cardinal* as holding that "a claim for declaratory judgment of invalidity is independent of the patentee's charge of infringement in the following—and only the following—way: an affirmed finding of noninfringement does not, without more, justify a reviewing court's refusal to reach the trial court's conclusion on invalidity," and noted that "*Cardinal,* addressed to the propriety of appellate jurisdiction over final judgments respecting infringement and validity, simply does not apply" in cases where "the trial court neither made a finding on infringement nor reached a conclusion on validity." *Super Sack,* 57 F.3d at 1060. This court is bound to follow to the Federal Circuit's construction of *Cardinal* in this case.

Third, and finally, APC's argument that Waber's alleged inequitable conduct before the PTO in prosecuting the '991 patent renders the '179 patent unenforceable as

well under the doctrine of "infectious unenforceability" does not provide an independent jurisdictional basis for that portion of APC's counterclaim that seeks a declaration that the '991 patent is unenforceable. If APC's theory of the infectious unenforceability doctrine is accurate, APC presumably would be free to introduce evidence relating to Waber's alleged inequitable conduct in prosecuting the '991 patent in order to prove that the '179 patent is unenforceable, but the Article III controversy would concern the '179 patent, not the '991 patent. Moreover, in light of the PTO's ongoing reexamination of the '179 patent, it is unlikely that this court will ever reach the merits of the parties' dispute about the '179 patent.

■ Accordingly, the court grants Waber's motion to dismiss APC's counterclaim for lack of subject matter jurisdiction insofar as APC seeks a declaratory judgment that the '991 patent is unenforceable, invalid and not infringed. The court also grants Waber's motion for leave to file an Amended Complaint deleting its claim of infringement of the '991 patent. The only remaining question is whether Waber should be required to pay APC's attorneys' fees incurred in defending against Waber's claim of infringement of the '991 patent as a condition of dismissal of that claim.

■ As noted above, Waber's motion is not governed by Rule 41(a)(2) because Waber is not dismissing all of the claims it has asserted in this action. Thus, Rule 41(a)(2) provides no basis upon which to award attorneys' fees to APC in this case. There are, however, at least two other sources of authority upon which the court could base an award of attorneys' fees in this case. See footnote 2 [2] First, 35 U.S.C. § 285 provides that "in exceptional cases" a court may award reasonable attorneys' fees "to the prevailing party" in a patent infringement case. APC sought an award of attorneys' fees under this provision in its Amended Counterclaim. Second, a district court has discretion under Rule 15(a) to require a party seeking leave to amend

---

2. *Federal Rule of Civil Procedure 11 provides a third potential source of authority for an award of attorneys' fees to APC in this case, but APC has not made a formal application for sanctions under Rule 11 in accordance with Local Civil Rule 11.3. This observation should not be construed as an invitation to APC to file such an application. Courts in this district will impose Rule 11 sanctions only in "the 'exceptional circumstance' where a claim or motion is patently unmeritorious or frivolous" at the time when the pleading was signed. Lightning Lube, Inc. v. Witco Corp., 144 F.R.D. 662, 666 (D.N.J.1992) (quoting Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir.1988)). Based upon the present record, such an "exceptional circumstance" does not appear to have been present in this case when Waber's counsel signed the Complaint. Moreover, Rule 11 itself contains a safe-harbor provision permitting the withdrawal of an allegedly offending claim after counsel receives notice of the adverse party's intent to seek Rule 11 sanctions. See Fed. R.Civ.P. 11(c)(1)(A). This safe-harbor provi-*

*sion reflects the policy that a party should be encouraged to withdraw a pleading that may have doubtful legal or factual premises when the defect is brought to its attention without penalty and without further satellite motion practice. This provision was added by the 1993 amendment of Rule 11 to encourage withdrawal of questionable contentions. As explained by the Advisory Committee on Civil Rules (1993):*

> *Under the former rule, parties were sometimes reluctant to abandon a questionable contention test that be viewed as evidence of a violation of Rule 11; under the revision, the timely withdrawal of a contention will protect a party against a motion for sanctions.*

*Fed.R.Civ.P. 11, Advisory Committee Notes, 1993 Amendments (West 1998). Thus, the safe-harbor policy of Rule 11(c)(1)(A) provides an instructive analogy to the present circumstance wherein Waber's withdrawal of its claim of infringement of the '991 patent followed its receipt of APC's allegations against that patent.*

to pay the costs, including attorneys' fees, that were "incurred by the opposing party in connection with preparing to meet those portions of the original pleading that have been eliminated from the action." 6 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 1486 (2d ed.1990); *see also Kronfeld v. First Jersey Nat'l Bank,* 638 F.Supp. 1454, 1460 (D.N.J.1986) (requiring plaintiff to costs incurred by defendants in filing answer to original complaint as condition of leave to file simplified amended complaint).

Under the circumstances of the present case, the court concludes that it would not be appropriate to require Waber to pay APC's attorneys' fees incurred in defending against Waber's claim of infringement of the '991 patent under either 35 U.S.C. § 285 or Rule 15(a). In order to be entitled to attorneys' fees under § 285 after trial in this case, APC would have to prove by clear and convincing evidence that Waber committed inequitable conduct in prosecuting the '991 patent before the PTO and/or that Waber pursued this litigation in bad faith. *See Cambridge Products Ltd. v. Penn Nutrients, Inc.,* 962 F.2d 1048, 1050–51 (Fed.Cir.1992). There is no sound justification for awarding such attorneys' fees upon Waber's decision to dismiss its claim of infringement of the '991 patent where APC has merely alleged, but not proven, inequitable conduct and bad faith on Waber's part. On the contrary, there is a sound justification to deny APC's request for attorneys' fees under § 285 under these circumstances. As the U.S. Court of Appeals for the Second Circuit observed in *Larchmont Eng'g Inc. v. Toggenburg Ski Ctr., Inc.,* 444 F.2d 490 (2d Cir.1971):

We find no abuse of discretion in [the district court's] ruling [permitting the plaintiff to voluntarily dismiss its patent infringement claims without awarding attorneys' fees to the defendant under § 285 or Rule 41(a)(2) ]. Indeed, to have ruled otherwise would have been extraordinary. The statutory provision for awarding attorney fees in patent cases is normally invoked only at the end of litigation. The legislative history of § 285 indicates that Congress intended, even after trial, that it be used sparingly, since it represents a departure from the usual rule that counsel fees are not awardable to the prevailing party in an action at law, and the broad policy against allowing costs to be erected as an undue barrier to litigation.

Defendants' assertion of valid misuse defenses does not establish that the suit was brought in bad faith, nor would proof of such defenses at trial necessarily entitle them to an award of counsel fees. After pretrial discovery revealed the weaknesses of its claims, [the plaintiff] may well have decided in good faith to minimize litigation expense by foregoing its claims and by taking a voluntary dismissal. Such a move should not be discouraged by the threat of imposing attorney fees.

*Id.* at 491. *See also W.L Gore & Assocs. v. Oak Materials Group,* 424 F.Supp. 700 (D.Del.1976) (declining to award attorneys' fees under § 285 on basis of plaintiff's alleged fraud and bad faith in obtaining patents after plaintiff formally disclaimed the patents and voluntarily dismissed suit for infringement).

Similarly, the court finds that there is no sound justification for an award of attorneys' fees under Rule 15(a). The purpose of requiring an amending party to reimburse the opposing party for costs and attorneys' fees incurred in defending against the original pleading is to prevent undue prejudice to the opposing party. *See Hayden v. Feldman,* 159 F.R.D. 452, 454–55 (S.D.N.Y.1995). Here, in light of Waber's filing of the Statement of Nonlia-

bility and Covenant Not to Sue and the Supplemental Statement of Nonliability and Covenant Not to Sue, there is no undue prejudice to APC in permitting Waber to dismiss its infringement claim on the '991 patent without requiring Waber to reimburse APC the costs and attorneys' fees APC has incurred in defending against that claim. Reimbursement of APC's attorneys' fees might be appropriate under Rule 15(a) if Waber merely sought to dismiss its infringement claim on the '991 patent without prejudice, but Waber has done much more than that. APC will walk away from this litigation knowing that it will never again be sued for alleged infringement of the '991 patent and that it remains free to market its own products. This is valuable consideration being given to APC by Waber as a condition of Waber's decision to withdraw its claim of infringement of the '991 patent. In light of result, APC should consider the costs and attorneys' fees it has incurred in defending against Waber's claim of infringement of the '991 patent money well spent.

## CONCLUSION

For these reasons, the court grants Waber's motion to dismiss APC's counterclaim for lack of subject matter jurisdiction to the extent APC seeks a declaratory judgment that the '991 patent is unenforceable, invalid and not infringed. The court also grants Waber's motion for leave to file an Amended Complaint deleting its claim of infringement of the '991 patent, without requiring Waber to reimburse APC for the attorneys' fees APC incurred in defending against that claim.

Additionally, because the court's decision to grant Waber's motions eliminates all issues pertaining to the '991 patent from this case, and because all discovery and motion practice pertaining to the '179 patent is stayed, pursuant to the court's

August 7, 1998 Order, pending the outcome of the ongoing reexamination of that patent by the PTO, the court will administratively terminate this action subject to the right of either party to move to reopen the case within thirty (30) days after the PTO's completion of its reexamination of the '179 patent.

### ORDER

THIS MATTER having come before the court on the motion of plaintiff, SL Waber, Inc. ("Waber"), to dismiss the counterclaim of defendant, American Power Conversion Corporation ("APC"), for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), insofar as APC seeks a declaratory judgment that U.S.Patent No. 5,458,991 ("the '991 patent") is invalid, unenforceable and not infringed, and for leave to file an Amended Complaint, under Federal Rule of Civil Procedure 15(a), to delete it claim for infringement of the '991 patent, and the court having considered the moving papers and the opposition thereto, and for the reasons set forth in the accompanying Opinion;

IT IS on this day of March, 1999, hereby ORDERED that Waber's motion to dismiss APC's counterclaim for lack of subject matter jurisdiction to the extent APC seeks a declaratory judgment that the '991 patent is unenforceable, invalid and not infringed is GRANTED; and

IT IS FURTHER ORDERED that Waber's motion for leave to file an Amended Complaint deleting its claim of infringement of the '991 patent is GRANTED; and

IT IS FURTHER ORDERED that the Clerk of Court shall administratively terminate this action upon the docket pending the outcome of the ongoing reexamination of U.S.Patent No. 5,440,179 ("the '179 patent") by the United States Patent and

Trademark Office ("PTO"), subject to the right of either party to move to reopen the case within thirty (30) days after the PTO's completion of its reexamination of the '179 patent; this termination is a docket-control device that does not operate as a dismissal nor does it bear any consequences for purposes of the statute of limitations.