**Mary PICHELMANN, Plaintiff–Appellant,**

v.

**Mary K. MADSEN, Professor & Chair, Department of Health Sciences, and Randall S. Lambrecht, Dean, School of Allied Health, University of Wisconsin–Milwaukee, Defendants–Appellees.**

No. 01–3736.

United States Court of Appeals, Seventh Circuit.

Submitted March 19, 2002.*

Decided March 19, 2002.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before WOOD, ROVNER, and EVANS, Circuit Judges.

### ORDER

Mary Pichelmann, a student and part-time employee at the University of Wisconsin–Milwaukee (UWM), sued Mary Madsen and Randall Lambrecht, the Chair of the Department of Health Sciences and the Dean of the School of Allied Health, respectively. Pichelmann alleged that they violated her First Amendment rights by ordering her to remove a quotation from her e-mail "signature," an automatically-generated message that appears at the bottom of all of her sent e-mail messages. The district court granted the defendants' motion for summary judgment. We affirm.

### Background

During 2000 Pichelmann was a student and part-time secretary at the McNair Program Graduate School at UWM, which provided her with an e-mail account. At some point before June of that year, Pichelmann reconfigured her e-mail signature so that the bottom of all her sent messages would automatically include the following quotation: "The truth shall set you free, but first it will piss you off!' Gloria Steinem." In August Pichelmann received a promotional transfer to the Department of Health Sciences in the School of Allied Health. Pichelmann continued to use her student e-mail account for work purposes.

On September 22 Pichelmann sent an e-mail message to her supervisor Lambrecht. Madsen then met with Pichelmann and told her to remove the quotation when sending any work-related messages. Madsen told Pichelmann that Lambrecht had ordered the quotation removed because the word "piss" was "vulgar" and "inappropriate" for work-related messages. Madsen also told Pichelmann that she could be subject to discipline if she did not remove the quotation. Shortly after speaking with Madsen, Pichelmann removed the quotation, but filed an internal complaint with the university that was denied.

She then brought this lawsuit *pro se* seeking injunctive and declaratory relief, claiming that the order to remove the quotation violated her First Amendment right to freedom of speech. After both parties moved for summary judgment, the district granted the defendants' motion and denied Pichelmann's motion.[1] The district court concluded that Pichelmann's speech was not a matter of public concern, but that even if it were, the School's interest in regulating "vulgar" or "inappropriate" language in the workplace outweighed Pichelmann's interests in using the quotation.

## Discussion

Pichelmann offers two arguments on appeal why her use of the quotation is protected speech under the First Amendment: (1) the quotation addresses an important matter of public concern and outweighs the School's interests in removing the quotation, and (2) the school created a limited public forum with its e-mail system. Pichelmann also argues that the order to remove the quotation violated both the Equal Protection Clause and the Commerce Clause.

We review a grant of summary judgment de novo, taking the facts and reasonable inferences in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Michael v. St. Joseph County,* 259 F.3d 842, 845 (7th Cir.2001). Summary judgment is appropriate when the record indicates no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

As an employer, the government has interests in regulating speech that differ from its interests in regulating the speech of citizens. *See Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Connick v. Myers,* 461 U.S. 138, 150–51, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Khuans v. Sch. Dist.,* 123 F.3d 1010, 1013 (7th Cir.1997). In the employment context, we analyze freedom-of-speech claims by employees with a two-part test: (1) the speech must address a matter of public concern or else it is not protected by the First Amendment, and (2) if it does address a matter of public concern, we then balance the employee's speech interests against the interests of the employer "in promoting the efficiency of the public services it performs through its employees." *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731; *Vargas–Harrison v. Racine Unified Sch. Dist.,* 272 F.3d 964, 971 (7th Cir.2001).

Regarding the first prong, speech is a matter of public concern if it addresses a matter of political, social, or other community concern. *Connick,* 461 U.S. at 145, 103 S.Ct. 1684. In determining whether statements relate to a matter of public concern, we examine their content, form, and context. *Id.* at 147–48, 103 S.Ct. 1684; *Khuans,* 123 F.3d at 1014. The speech need not relate to a large, vital, or globally significant issue to be protected, *see Dishnow v. Sch. Dist. of Rib Lake,* 77 F.3d 194, 197 (7th Cir.1996), but it must relate to more than personal grievances or private interests, *see Gonzalez v. City of Chicago,* 239 F.3d 939, 941 (7th Cir.2001). Moreover, we have explained,

---

1. In December 2000, Pichelmann was terminated from her job at the Department of Health Sciences and returned to her previous job at the McNair Program Graduate School. In her brief, Pichelmann argues that Madsen terminated her in retaliation for bringing this lawsuit. Pichelmann moved to amend her complaint to include this "retaliation" claim. The district court granted her motion; however, Pichelmann never amended her complaint. Because she failed to raise the claim in the district court, it is waived.

just because speech *refers* to a matter of public importance does not mean that it *addresses* a matter of public concern; we must delve deeper and look to the point of the speech in question. *Kokkinis v. Ivkovich,* 185 F.3d 840, 844 (7th Cir.1999); *Wales v. Bd. of Educ.,* 120 F.3d 82, 84 (7th Cir.1997). Specifically, we examine whether the primary purpose of the speech is to address a matter of public concern or to further some private interest. *Kokkinis,* 185 F.3d at 844; *Wales,* 120 F.3d at 84–85. If speech has both public and private purposes, we consider which element predominates; speech that is "closer to the 'private' than to the 'public' end of the spectrum" is not a matter of public concern. *Wales,* 120 F.3d at 85; *see also Taylor v. Carmouche,* 214 F.3d 788, 792 (7th Cir.2000); *Kokkinis,* 185 F.3d at 844.

■ Under the second prong, employers have an interest in restricting speech that they honestly and reasonably believe to be inappropriate or disruptive. *See Waters v. Churchill,* 511 U.S. 661, 677, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994); *Taylor,* 214 F.3d at 794. In balancing this interest against the employee's speech interests, we consider such factors as the time, place, and manner of the speech; whether the speech was or had the potential to be disruptive or inappropriate in a workplace setting; and whether the speech was necessary for informed decision-making. *See Khuans,* 123 F.3d at 1015.

■ In this case, Pichelmann's speech does not satisfy the first prong. Pichelmann's use of the quotation, like a lot of speech, relates to both public concerns and private interests. *See Wales,* 120 F.3d at 84. On the one hand, the abstract quotation may relate to issues of public interest that Pichelmann characterizes as "truth, freedom, and anger." On the other hand, Pichelmann's motivation in using the quo-

tation appears to be personal as well. In altering her e-mail configuration so that the quotation appears at the end of all her messages, Pichelmann was no doubt seeking to express something about herself–for example, her agreement or identification with the quotation or her endorsement of Steinem's work or views–rather than educating or informing recipients about a specific matter of public concern. *See id.* at 85 (holding speech not of "public concern" when private element predominates public element). Pichelmann's speech falls on the private end of the spectrum, and therefore is not a matter of public concern. *See id.; see also Kokkinis,* 185 F.3d at 844; *Khuans,* 123 F.3d at 1017.

Even assuming that Pichelmann's speech addresses a matter of public concern, her claim fails under the second prong. As an employer, the School has an interest in restricting "inappropriate" or "vulgar" language on work-related messages sent among employees or sent to others on behalf of the school. *Taylor,* 214 F.3d at 794; *Khuans,* 123 F.3d at 1013–14. Moreover, employers are given "a wide degree of deference" in judging what is inappropriate or disruptive workplace conduct. *Kokkinis,* 185 F.3d at 845 (*quoting Connick,* 461 U.S. at 151–52, 103 S.Ct. 1684). And it was reasonable for Lambrecht to conclude that the word "piss" was inappropriate in work messages or might be interpreted as vulgar. *See Taylor,* 214 F.3d at 794; *Greer v. Amesqua,* 212 F.3d 358, 369–71 (7th Cir.2000). In contrast, the restriction on Pichelmann's speech was minimal. The defendants made clear that any restrictions related only to Pichelmann's work e-mail; she was free to keep the quotation on any school or personal messages. Moreover, the restriction had nothing to do with the content or viewpoint of the speech; she could use another statement expressing a similar message. Regardless of whether Pichel-

mann had to reconfigure her e-mail signature each time she sent non-work messages, cut-and-paste the quotation, or re-type it for those messages she wanted to include it, these minimal burdens are outweighed by the School's interest in restricting inappropriate language from being used among employees or on behalf of the School. *See id.* at 846; *Wales,* 120 F.3d at 85.

■ Pichelmann also argues that the university created a limited public forum with its e-mail system, and therefore could not restrict her from using the quotation. A limited public forum, as opposed to a traditional public forum such as a street or a park, refers to a forum that the government intentionally opens for public discourse. *Good News Club v. Milford Central School,* 533 U.S. 98, 121 S.Ct. 2093, 2100, 150 L.Ed.2d 151 (2001); *Perry Educ. Ass'n v. Perry Local Educ. Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983); *DeBoer v. Vill. of Oak Park,* 267 F.3d 558, 565 (7th Cir.2001). Even though the government does not have to open a limited public forum in the first place, once it does so any restrictions on speech within the forum must be reasonable in light of the forum's purpose and may not constitute viewpoint discrimination. *Good News,* 121 S.Ct. at 2100; *DeBoer,* 267 F.3d at 566.

We doubt that the university created such a forum here, however, because the e-mail system was not indiscriminately open for use by the general public. *See Perry,* 460 U.S. at 47, 103 S.Ct. 948 (holding that interschool mail system was not a public forum because not indiscriminately open to the general public); *see also Loving v. Boren,* 956 F.Supp. 953, 955 (W.D.Okla. 1997) (university computer and internet services not a limited public forum because not open to the general public), *aff'd,* 133 F.3d 771 (10th Cir.1998). Pichelmann argues that the e-mail system's connection to the Internet distinguishes it from the mail system in *Perry* because the Internet is used throughout the world. But we need not decide this issue here, however, because even if the school created a limited public forum, the restriction on Pichelmann's speech was reasonable and not viewpoint discrimination. As discussed above, the School had an interest in prohibiting inappropriate language from work messages. *Taylor,* 214 F.3d at 794; *Khuans,* 123 F.3d at 1013–14. Moreover, the restriction was limited to her work messages, and it did not relate to the viewpoint being expressed. *See Good News,* 121 S.Ct. at 2100; *DeBoer,* 267 F.3d at 566. Most importantly, Pichelmann was free to use the system without restriction for any non-work messages. *Perry,* 460 U.S. at 53–54, 103 S.Ct. 948 (explaining that whether speakers have alternative modes or channels of communication is to be considered in assessing the reasonableness of restrictions).

Finally, Pichelmann argues that the restriction on her speech violated both the Equal Protection Clause and the Commerce Clause. These arguments are raised for the first time on appeal, and therefore are waived. *See Perry v. Sullivan,* 207 F.3d 379, 383 (7th Cir.2000). We note, however, that Pichelmann was not a member of a protected class nor was her speech restricted because of class membership, *see United States v. Jester,* 139 F.3d 1168, 1171 (7th Cir.1998), and the removal of the quotation has too attenuated a connection with interstate commerce to constitute a violation, *see United States v. Morrison,* 529 U.S. 598, 615, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000).

Accordingly, the district court's judgment is AFFIRMED.